Circuit Court, D. Massachusetts. 1879.

[See 4 Fed. 543.]

------

## Case No. 4,128.

DUNBAR v. BALL.

[2 Cranch, C. C. 261.][1]

Circuit Court, District of Columbia. Oct., 1821.

SLAVERY — BRINGING SLAVES IN DISTRICT OF COLUMBIA—RIGHT TO FREEDOM.

If a citizen of the United States owning a slave in Virginia, and residing there, removes

------

[1] [Reported by Hon. William Cranch, Chief Judge.]

to the county of Washington, in the District of Columbia, with a bona fide intention of settling therein; and afterwards causes the said slave to be brought into said county, through the county of Alexandria, within one year after such removal; and if the owner, within three years after such removal, sell the said slave, the slave thereby becomes entitled to freedom; notwithstanding the acts of congress of the 3d of May. 1802, § 7 [2 Stat. 194], and 24th of June, 1812, § 9 [2 Stat. 757], the said slave having been in Alexandria county merely in transitu.

[Cited in Battles v. Miller, Case No. 1,110.]

Petition for freedom. The facts were agreed to be as follows:—"The petitioner [Leonard Dunbar] is a native-born slave of Virginia, and was there purchased by one John B. Brunet, a citizen and inhabitant of that state, some time in the month of March, 1820; and continued there in the possession and service of said Brunet, until some time about the 25th of March last (1821,) when the said Brunet removed from the said state into the district of Columbia and settled himself as a citizen and inhabitant of Georgetown, in the county of Washington, leaving the said petitioner in Virginia for about three weeks after such removal of said Brunet, the said petitioner continuing to be the bona fide property of said Brunet, and so being the bona fide property of the said Brunet, was, in about three weeks after the removal and settlement of the said Brunet in Georgetown, as aforesaid, brought, by the order of said Brunet, from Virginia, through Alexandria county, into Georgetown aforesaid, and there continually kept in the possession and service of the said Brunet, until some time about the 20th of July last (1821,) when the petitioner was sold in Georgetown, by said Brunet to the defendant [James Ball] as a slave for life."

By the 1st section of Act Md. 1796, c. 67, adopted by congress as the law of this county, a slave brought into the state, for sale, or to reside, ceases to be property, and becomes free. By the 2d section, however, it is provided that it shall be lawful for any citizen of the United States who shall come into the state with a bona fide intention of settling therein, to bring into the state, at the time of his removal, or within one year thereafter, any slave, the property of such citizen at the time of his removal, and to retain the same as a slave. But by the 3d section it is enacted, "that nothing herein contained, shall be construed to enable any person or persons, so removing as aforesaid, to sell or dispose of any slave or slaves, imported by virtue of this act, or their increase, unless such person or persons shall have resided within this state three whole years next preceding such sale, except in cases of disposition by last will and testament. and dispositions by law for bona fide debts, or consequent upon intestacy." By the act of congress of the 3d of May, 1802, § 7 (2 Stat. 193), it is enacted, "that no part of the laws of Virginia or Maryland, declared by an act

of congress passed the twenty-seventh day of February, 1801, 'concerning the District of Columbia,' to be in force within the said district, shall ever be construed so as to prohibit the owners of slaves to hire them within, or remove them to, the said district, in the same way as was practised prior to the passage of the above-recited act." And by the 9th section of the act of the 24th of June, 1812 (2 Stat. 755), it is enacted, "that hereafter it shall be lawful for any inhabitant or inhabitants in either of the said counties, owing and possessing any slave or slaves therein, to remove the same from one county into the other, and to exercise freely and fully all the rights of property in and over the said slave or slaves therein, which would be exercised over him, her, or them, in the county from whence the removal was made, any thing in any legislative act in force, at this time, in either of the said counties, to the contrary, notwithstanding."

Mr. Jones, for defendant, contended that Act Md. 1796, c. 67, was a penal law, and ought to be construed favorably to prevent a forfeiture. It merely prohibits the sale within the three years, but a sale contrary to the act does not give freedom to the slave. The sale is only void. But, under the act of the 24th of June, 1812, Brunet, as soon as he brought his slave into Alexandria county, which he had a right to do under the act of the 3d of May, 1802, had a right to remove him to Washington county, and there exercise over him fully all the rights of ownership.

Mr. Taney, for petitioner, contended that the act of 24th June, 1812, was only applicable to bona fide inhabitants and residents of Alexandria county, not to a person merely in transitu.

THE COURT (nem. con.) rendered judgment for the petitioner.